Drevet Hunt (Bar No. 240487)
dhunt@cacoastkeeper.org
CALIFORNIA COASTKEEPER
1100 11th Street, 3rd Floor
Sacramento, California 95814
Phone: (415) 606-0864
Fax: (415) 520-6125

Patrick McDonough (SBN 288285)
San Diego Coastkeeper
8305 Vickers Street, Suite 209
San Diego, CA 92111
Ph: (760) 525-6838
Email: patrick@sdcoastkeeper.org

Attorneys for Plaintiff
San Diego Coastkeeper

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a California non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> CALMAT CO., a Delaware corporation doing business as Vulcan Materials Company, <br><br> Defendant. | Case No.: 3:23-cv-01090-AJB-JLB <br><br> **[PROPOSED] CONSENT DECREE** |

# CONSENT DECREE

The following Consent Decree (or "Agreement") is entered into by and between San Diego Coastkeeper ("Coastkeeper") and CalMat Co., a Delaware corporation doing business as Vulcan Materials Company ("Defendant"). The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties.";

**WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS,** Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS**, Calmat Co. is the owner and operator of the Facility located at 2041 Heritage Road, Chula Vista, California 91913, or alternative at 2275 Hard Rock Road, Chula Vista, California 91911 ("Facility");

**WHEREAS**, Calmat Co. is doing business as Vulcan Materials Co. at 2041 Heritage Rd., Chula Vista, CA 91913, or alternatively at 2275 Hard Rock Road, Chula Vista, California 91911;

**WHEREAS**, the Facility's industrial activities consist of mining and processing rock and stone for construction purposes. The Facility is categorized under Standard Industrial Classification ("SIC") Code 1429, covering establishments engaged in the production and/or processing of crushed and broken stone.

**WHEREAS**, Plaintiffs members live and/or recreate in and around waters which receive discharges from the Facility, including specifically the Otay River, the San Diego Bay, and eventually the Pacific Ocean;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos.

2015-0057-DWQ and 2015-0122-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on January 13, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director San Diego Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ and Order 2018-0028-DWQ;

**WHEREAS**, a second 60-Day Notice was sent to Defendant, its registered agent, the EPA, the State Board, and the Regional Board on February 27, 2023;

**WHEREAS**, on June 12, 2023, San Diego Coastkeeper filed a complaint against Defendant in the Southern District of California, Civil Case 3:23-cv-0190-AJB-JLB ("Complaint"), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the General Permit at the Facility;

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the first and second 60-Day Notices and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Southern District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      For purposes of this Consent Decree, Settling Parties agree that the Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.  Defendant reserves its right to contest whether the Complaint states a claim if the Consent Decree is not given effect.

4.      For purposes of this Consent Decree, Settling Parties agree that San Diego Coastkeeper has standing to bring this action.  Defendant reserves its right to contest standing if the Consent Decree is not given effect.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

## I.  OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by San Diego Coastkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.  AGENCY REVIEW AND CONSENT DECREE TERM

### A.  AGENCY REVIEW OF CONSENT DECREE

8.      Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period ("Agency Review Period") expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.      Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B. DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a. "BAT" means the Best Available Technology Economically Achievable.

b. "BCT" means the Best Conventional Treatment Technology.

c. "BMPs" means Best Management Practices.

d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f. "DA" means "Drainage Area."

g. "DP" means Discharge Point."

h. "Effective Date" means the effective date of this Consent Decree, which shall be the date of execution by the Parties.

i. "MIP" means a Monitoring Implementation Plan.

j. "PPT" means Pollution Prevention Team.

k. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

l. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

m. "SMARTS" means the California State Water Resources Control Board's Storm water Multiple Application and Report Tracking System.

n. "SWPPP" means a Storm Water Pollution Prevention Plan.

o. "Term" means the period between the Effective Date and the "Termination Date."

p. "Termination Date" means the latest of:

    i. June 30 following five (5) years from the Effective Date;

    ii. seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following five (5) years after the Effective Date; or

    iii. seven (7) calendar days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

    iv. Notwithstanding (i) through (iii) above, the Termination Date shall be the date upon which the San Diego Regional Water Quality Control Board or State Water Resources Control Board approves a Notice of Non-Applicability ("NONA") for the Facility pursuant to the General Permit.

q. "Wet Season" means the seven-month period beginning October 1st of any given calendar year and ending April 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12. <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13. <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1)

develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14. <u>Flow Sensor</u>. Within forty-five (45) days of the Effective Date, Defendant shall install and maintain, at all discharge points designated in the SWPPP, transducers or electronic flow meters to determine if discharges occur and to measure the amount of discharge. The flow sensors shall be capable of measuring flow down to at least 0.1 inches, and record start/stop times for any discharge event. During the Term, Defendant shall collect data using the sensor for all discharge events to the nearest 0.1 inch, including start/stop times.

15. <u>Structural and Non-Structural BMPs for the Facility</u>

    a. Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

        i. Removal and/or Coverage all abandoned or inutile materials at the Bone Yard and a staging area at the southeast corner of the Facility;

        ii. Consolidate and/or cover all storage of inutile materials and vehicles in one location;

        iii. Install a rumble strip or grate for outgoing truck traffic at a location adjacent to the scales at the Facility entrance.

b.  By October 20, 2023, Defendant will decommission the discharge points identified in the current SWPPP as DP-2 and DP-5.

c.  By March 31, 2024, Defendant will submit an analysis to San Diego Coastkeeper describing a plan to retain all stormwater onsite and prevent off-site discharges up to the 85th percentile storm event based upon local meteorological data. This plan shall be designed to achieve compliance with this Agreement and the General Permit by capturing and retaining on site 85th Percentile Storm Events as that term is defined by Attachment I, Section II.E. of the General Permit. The design shall be reviewed and certified by a licensed professional engineer and receive all requisite approvals to ensure such capture and retention in fact is achieved. The retention BMPs shall maintain the effective capacity to capture, infiltrate and/or evapotranspire the volume of runoff produced up to and during the 85th percentile 24-hour precipitation event based upon local, historical precipitation data and records pursuant to Attachment I, Section II of the General Permit. The analysis will examine the following means of achieving that objective, among other means:

i.  Decommission DP-1, regrade DA-3 in a manner that redirects stormwater from DP-1 to the basin adjacent to DP-3, expand the stormwater holding capacity of that basin, and pump stormwater that collects in that basin to DA-4 for consumptive use or further diversion to Basin 2.

ii.  Decommission the Basin 1 outflow to terminate the conveyance of stormwater to DP-2, and pump stormwater collected in Basin 1 to Basin 2.

iii.  Regrade DA-11 to eliminate stormwater flows to DP-6.

d.  Within thirty (30) days of completion, Defendant shall provide Plaintiffs with the calculations used to determine that the BMPs set forth in the analysis described in subsection c above, meet the On-Site Compliance Option requirements of Attachment I, Section II of the General Permit.

e.  By September 30, 2024, Defendant will implement the BMPs set forth in the analysis described in subsection c above.

f.  Prior to the start of the wet season, annually by September 15th, Defendant shall employ and secure new wattles/filters around all drain inlets;

g.  Prior to the start of the wet season, annually by September 15th, Defendant shall employ and secure new straw wattles around all drain inlets and at all discharge locations if no drain is present;

h.  During the wet season, as necessary, Defendant shall replace the wattles/filters at the drain inlets when degraded or ineffective;

i.  Defendant shall institute a formal pre-rain protocol throughout the wet season, involving inspection of any filters and wattles deployed at the site, removal of any exposed waste material, and relocation of uncontained debris bins and trash cans under cover;

j.  Defendant shall inspect operation work areas daily to ensure adequate implementation and maintenance of operational procedures and control measures;

k.  Defendant shall perform maintenance activities only in designated work areas or beneath covered maintenance areas, and when vehicle or equipment maintenance activities must be performed outdoors, absorbent pads should be laid down before conducting any operational activity and care shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

9

### B. SAMPLING AT THE FACILITY

16.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall, to the extent possible, collect samples of storm water discharge **from each discharge point** from Qualified Storm Events as defined by the General Permit. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. Any failure to collect samples from any or all Discharge Points during a QSE, including without limitation as a result of insufficient discharge, shall be documented, including by taking photographs, and submitted to San Diego Coastkeeper by email within five (5) days of a written request for such records by San Diego Coastkeeper.

17.    <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations or a revised pollutant source assessment, such parameter shall be treated as if listed in Table 1 for the purposes of this Consent Decree, including the action plan requirements below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes.

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

19.    <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

20.    <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit,

and shall provide copies to San Diego Coastkeeper within five (5) days of receiving the laboratory report with the results.

### C. REDUCTION OF POLLUTANTS IN DISCHARGES

21.   Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

### TABLE 1

| Analytes | Values |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Oil and Grease | 15 mg/L |
| pH | 6.5 to 8.5 su |
| Nitrate + Nitrite | 0.68 mg/L |

22.   Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from the same Discharge Point in a single Reporting Year exceeds any numeric limit in Table 1.

23.   Action Plans: As of the Effective Date, and for the remainder of the Term, if Defendant discharges non-storm water from a Discharge Point in violation of Paragraph 12; or beginning September 30, 2024, if storm water samples demonstrate an Exceedance of Table 1 as defined above and the Facility has not implemented BMPs described in Section 15(c) above, Defendant shall prepare and submit to San Diego Coastkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). The complete Action Plan shall be submitted to San Diego Coastkeeper by June 30 of each year while this Consent Decree remains.

   a.   Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged; (2) an assessment of the source of each contaminant exceedance, and/or applicable non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to achieve

11

compliance with the numeric limit(s), and/or non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Defendant shall notify San Diego Coastkeeper in writing when an Action Plan has been implemented.

b. <u>Action Plan Proposed BMPs:</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

   i. <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

   ii. <u>Treatment Systems</u>: Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

   iii. <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c. <u>Action Plan Review</u>: San Diego Coastkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving San Diego Coastkeeper's proposed revisions to an Action Plan, Defendant shall consider each of San Diego Coastkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28 below.

e. <u>Action Plan Payments</u>: Defendant shall pay Seven Thousand Dollars ($7,000.00) each time an Action Plan is submitted to San Diego Coastkeeper. Payments shall be made to "San Diego Coastkeeper" via certified mail, return receipt requested to San Diego Coastkeeper Attn: Phillip Musegaas 8305 Vickers Street, Suite 209 San Diego, CA 92111. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D. VISUAL OBSERVATIONS**

24. <u>Storm Water Discharge Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct sampling event visual observations during the Facility's operating hours pursuant to all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

25.    <u>Monthly Visual Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

26.    <u>Visual Observations Records</u>: Defendant shall maintain observation records, including photographs of Discharge Points in the Wet Season, to document compliance with Paragraph 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an adequate condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; and (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges.  Defendant shall provide San Diego Coastkeeper with a copy of those records within seven (7) days of receipt of a written request from San Diego Coastkeeper for those records.

27.    <u>Employee Training Program</u>: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that

[PROPOSED] CONSENT DECREE                                    Case No. 3:23-cv-01090-AJB-JLB

meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

    a. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

    b. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

    c. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the General Permit) familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

    d. <u>Sampling Training</u>: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. <u>Visual Observation Training</u>: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. <u>Non-Storm Water Discharge Training</u>: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

h. The Defendant shall maintain training records to document compliance with this Paragraph and shall provide San Diego Coastkeeper with a copy of these records within seven (7) days of receipt of a written request;

i. <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within thirty (30) days of the effective date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

28. <u>SWPPP Revisions</u>:

a. <u>Initial SWPPP Revisions</u>: Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to San Diego Coastkeeper within thirty (30) days of the Effective Date for San Diego Coastkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.  A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.  A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.  Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree, at the time such BMPs are implemented;

iv.  A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree, including, inter alia, accurate depictions of the Facility's current drainage areas, storm water flow pathways, and all discharge points;

v.  A MIP as required by sections XI and X.I of the General Permit;

vi.  A designation (by position/title) of employees for specific SWPPP implementation responsibilities, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.  A Training Program as described above at Paragraph 28.

b.  Additional SWPPP Revisions:

i.  Within thirty (30) days after implementation of any Action Plan approved by San Diego Coastkeeper (or finalized following resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by and implemented according to the Action Plan and submit the complete, updated SWPPP to San Diego Coastkeeper for San Diego Coastkeeper's review and comment.

17

ii.  Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to San Diego Coastkeeper for San Diego Coastkeeper's review and comment.

c.  Review of SWPPP:  For any SWPPP updates pursuant to Paragraph 28(a) and 28(b), San Diego Coastkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving San Diego Coastkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the SWPPP to SMARTS.

E.  **COMPLIANCE MONITORING AND REPORTING**

29.  Every year during the Term, San Diego Coastkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection

would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and San Diego Coastkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to San Diego Coastkeeper. San Diego Coastkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. San Diego Coastkeeper shall be permitted to take photographs or video recording during any Site Inspection.

30.   <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to San Diego Coastkeeper as follows:

a.   Defendant shall copy San Diego Coastkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality, provided that this provision may be satisfied by notifying San Diego Coastkeeper that such materials have been uploaded to SMARTS;

b.   Within three (3) business days of receipt by Defendant, send to San Diego Coastkeeper any compliance document, inspection report, written

19

communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Defendant shall mail paper copies or email electronic copies of documents to San Diego Coastkeeper at the relevant notice address contained below.

31.    Compliance Monitoring. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Five Thousand Dollars ($5,000.00) per year until this Consent Decree terminates. Payment shall be made within thirty (30) days of the Effective Date, and annually thereafter on the anniversary of the Effective Date. The payment shall be made via check, made payable to: "San Diego Coastkeeper" via certified mail, return receipt requested to San Diego Coastkeeper Attn: Phillip Musegaas 8305 Vickers Street, Suite 209 San Diego, CA 92111. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

### F.    ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

32.    Environmental Mitigation Project: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds in San Diego County, Defendant agrees to make a payment totaling Twenty-Five Thousand Dollars ($25,000) to Rose Foundation made within thirty (30) days of the Effective date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th St., APT 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>San Diego Coastkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Seventy-Five Thousand Dollars ($75,000.00) to San Diego Coastkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Effective Date. The payment shall be made payable to: California Coastkeeper Alliance and delivered by overnight carrier to California Coastkeeper Alliance, Attn: Sean Bothwell, 1100 11th Street, 3rd Floor, Sacramento, California 95814. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    In the event that Defendant fails to submit to San Diego Coastkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be via overnight mail to Rose Foundation, 201 4th St., APT 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

35.    <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to San Diego Coastkeeper.

Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph ___. Payment shall be via overnight mail to Rose Foundation, 201 4th St., APT 102, Oakland, CA 94607.

## IV. **DISPUTE RESOLUTION**

36.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37.    <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

38.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 37, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

[PROPOSED] CONSENT DECREE                     Case No. 3:23-cv-01090-AJB-JLB

## V. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

40.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI. **MISCELLANEOUS PROVISIONS**

43.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.  <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.  <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.  <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.  <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

48.  <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.  <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.  <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

51.  <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52. <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

54. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party

seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| San Diego Coastkeeper<br>Patrick McDonough<br>8305 Vickers Street<br>San Diego, California 92111<br>patrick@sdcoastkeeper.org<br>(760) 525-6838 | Sean Hungerford<br>Harrison Temblador Hungerford &<br>Guernsev<br>2801 T Street<br>Sacramento. CA 95816<br>shungerford@hthglaw.com<br>(916) 706-2845 |
| With copies to: | With copies to: |
| California Coastkeeper Alliance<br>Drevet Hunt<br>1100 11th Street, 3rd Floor<br>Sacramento, California 95814<br>dhunt@cacoastkeeper.org<br>(415) 606-0864 | Mark S. Reardon, Esq.<br>Vice President and Asst. General<br>Counsel<br>Vulcan Materials Company<br>2526 E. University Drive<br>Phoenix, AZ 85034<br>(602) 528-8951<br>reardonm@vmcmail.com |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

1    58.    If for any reason the DOJ should object to this Consent Decree or the

2    District Court should decline to approve this Consent Decree in the form presented,

3    the Parties shall use their best efforts to work together to modify the Consent Decree

4    within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the

5    Parties are unable to modify this Consent Decree in a mutually acceptable manner

6    that is also acceptable to the District Court, this Consent Decree shall immediately be

7    null and void as well as inadmissible as a settlement communication under Federal

8    Rule of Evidence 408 and California Evidence Code section 1152.

9

10    The Parties hereto enter into this Consent Decree and submit it to the Court for

11    its approval and entry as a final judgment.

12    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

13    as of the date first set forth below.

14

15    APPROVED AS TO CONTENT

16

17

18    Dated: January _____, 2024              By: _____

19                                                        Phillip Musegaas
                                                          San Diego Coastkeeper
20

21

22    Dated: January __4__, 2024              By: _____

23                                                        Grant Hughes, Vice President
                                                          Calmat Co., dba Vulcan Materials
24                                                        Company

25

26

27

28

27

58.     If for any reason the DOJ should object to this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: January ___/___, 2024                By: _____
                                            Phillip Musegaas
                                            San Diego Coastkeeper

Dated: January ____, 2024                   By: _____
                                            Grant Hughes, Vice President
                                            Calmat Co., dba Vulcan Materials
                                            Company

[PROPOSED] CONSENT DECREE                              Case No. 3:23-cv-01090-AJB-JLB

APPROVED AS TO FORM

California Coastkeeper

Dated: January __2__, 2024                By: _____

                                              Drevet Hunt
                                              Attorney for Plaintiff
                                              San Diego Coastkeeper

                                          Calmat Co., dba Vulcan Materials
                                          Company

Dated: January __8__, 2024                By: _____

                                              Sean Hungerford
                                              Attorney for Defendant,
                                              Calmat Co., dba Vulcan Materials
                                              Company

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _____          SOUTHERN DISTRICT OF CALIFORNIA

                                     _____
                                     HONORABLE ANTHONY J. BATTAGLIA
                                     United States District Court Judge

28